Again, my name is Bill Maurer. In this case, I'm going to be representing recall Dale Washam, Robin Farris, and the law firm of Oldfield and Helston. Your Honors, the plaintiffs here did not receive the full relief they sought from the district court. Specifically, they wished to be able to speak in future recall campaigns. And to do that, they needed a declaration that the statute at issue here was unconstitutional, and they also needed an injunction that prevented the PDC from enforcing it in the future. Instead, the order they received only enjoined the PDC from enforcing the statute against them in an election that had occurred years in the past. And before I continue, Your Honor, I'd like to also reserve four minutes for rebuttal. I apologize. Is that how you interpret the judge's order? It's a little ambiguous. Your Honor, I do not believe it's ambiguous at all respectfully. It says that the PDC is enjoined from enforcing this statute against the plaintiffs in this case only, given the fact that the specific case that was raised in the as-applied challenge concerned the election of Dale Washam. I understand what it concerned, Counsel. You can proceed with your argument. For this reason, the plaintiffs here are different from the plaintiffs in the Colorado Right to Life v. Kauffman case, and that case does not control. In that case, the plaintiffs had received all full practical relief they could achieve. There was no further relief that the court could have granted there that would have affected the plaintiffs in that case at all. The only further relief that the court could have granted would have affected only parties who were not before the court. And who were not only not before the court, but who were also differently situated from the parties that had achieved full relief. Here, in contrast, relief would affect these particular plaintiffs and their specific circumstances, as well as every other recall campaign in the state of Washington. In contrast to the situation in Kauffman, section 405 sub 3 continues to suppress the speech of the plaintiffs, in this case, in the speech of everyone in the state of Washington who participates in recall campaigns. The only way for every Washingtonian, including the plaintiffs, to participate in another recall campaign without this law suppressing their speech Counsel, to focus your argument, the focus or the limitation on our opinion, prior opinion, acknowledge that there might be circumstances where, with a wink and a nod, there could be the potential for corruption in a particular recall campaign. I'm not sure the record is improved in that way. So, why haven't you received all the relief that you needed in that particular campaign? That's one question. And the second is, the state's brief seems to suggest that they read it as giving your client, in that case, relief in any recall campaign, which is somewhat in tension with the wink and a nod concept. And to the extent that lawyers are the ones involved in the concern about future campaigns, it would help sharpen the focus as to why we would need, at this point, on this record, go forward to reach a facial challenge that we didn't reach in the first round. Yes, Your Honor. First of all, with regard to the state's interpretation of the order of the district court, the state's interpretation does not make any sense at all. In fact, it completely contradicts the plain language of the order. And as Your Honor recognized, it is inconsistent with the idea that this needs to be done to fight corruption or its appearance. If the state is correct, then this statute is necessary. It does not make any sense for the state to have basically absolved the plaintiffs in this case from ever having to comply with this law, three people who have a blank check in perpetuity to be able to participate in recall campaigns, while the rest of the state of Washington does not have that opportunity. With regard to Your Honor's question about the wink and the nod, that interpretation, the state's argument that that's sufficient to meet its burden for demonstrating the facial validity of this law is incorrect for three reasons. First, if the possibility of coordination was sufficient to save the statute, then every single case in which an independent expenditure, a case that restricts contributions to independent expenditures, would not have, could not be declared unconstitutional because there exists in each of those cases the possibility that there could be coordination. And this court has specifically addressed those situations where there is that so-called wink and the nod, as has the Second Circuit in Wisconsin right to life versus Barlin. In Long Beach Chamber of Commerce case, this court recognized that if a recall campaign did in fact coordinate with a candidate, the result would be that it loses its ability to call itself independent. It would be making contributions to that campaign, and those contributions could be capped. That satisfies the case, the state's anti-corruption interest. What the state simply cannot do is simply assume that every single recall campaign in the state of Washington coordinates its speech with a candidate, and remembering that there are no candidates in recall campaigns in the state of Washington, it can't simply assume that every single recall campaign coordinates its speech with a candidate. You don't have to. On a facial attack, you confront the issue as whether it could be constitutional as applied in any case, singular case, or does it so that it shouldn't be struck down in all respects. And that's why we rule narrowly on the case at hand. And that's what we had and clarified the status of the distinction between the structure of the Washington recall statute and others. But as I say, we reserve the issue as to whether there might be circumstances in a particular election where there was, in fact, the wink and nod type of corruption. So that's why it's important for us to understand why we should declare or withhold the declaring of facial invalidity, because we are not sure on the record whether there could not be a constitutional application. Your Honor, respectfully, the record here is complete, and the state has the obligation to produce evidence that there is corruption or the appearance of corruption that can be resolved by this particular restriction on speech. And the state has not been able to point to a single instance, not one, in the history of the state of Washington in which a recall campaign has coordinated with a candidate or a candidate's committee. The fact that there has never been an instance of coordination in this state certainly suggests that there are no constitutional applications of this law. With regard to the standard for the facial invalidity, I would argue, I would note, Your Honor, that every application standard is but one of the standards that the courts use to determine the facial validity of a statute. The statute also has to have a plainly legitimate scope. Here, the law does not have a plainly legitimate scope. It applies to every single recall campaign in the state of Washington, unless and until that recall campaign has to go into court and prove itself year after year, election after election, that they are acting independently. That is exactly the kind of piecemeal adjudication that the courts have abandoned, specifically the Fourth Circuit in the North Carolina right to life decision, where they rejected the need for people to have to go into court each election to be able to demonstrate that they're exercising the rights that the Supreme Court has recognized that they have. So for that reason, in addition to those on your typical facial challenge, this is a First Amendment case. And in U.S. v. Stevens and in the Washington State Grange case, the U.S. Supreme Court recognized post-Colorado right to life v. Kauffman that First Amendment cases present a different standard when the statute is overbroad. In those circumstances, a plaintiff may be able to demonstrate the facial invalidity of a statute affecting speech when it applies to a substantial number of instances. Here, it applies to all recall campaigns, regardless of whether there is a candidate that exists or not. And in Washington State, there is no candidate. If you apply the standard that this Court adopted, both in Fallheimer and in Long Beach, and the Court, the standard used by the Seventh Circuit, the D.C. Circuit, the Second Circuit, Fifth Circuit, we see that the connection between recall committees in the state of Washington and candidates and candidates' committee is tenuous at best, or nonexistent at best. In essence, there is a broad gap between candidates and recall committees in the state of Washington. As the Supreme Court put it in the Arizona Freedom Cup case, the candidate funding circuit has been broken. Here, the state has never demonstrated that there was any candidate funding circuit that ever existed in the first place. And it's the state's obligation to come forward with proof that there is an actual problem in Washington State that can be addressed by a law that suppresses speech. Do you want to address the exclusion of the declarations, Crawford? Yes, Your Honor. Those declarations were demonstrated in response to an unexpected argument from the state, and it was unexpected because the state had just lost it before this Court, that this case was moot. In addition to this case being capable of repetition yet evading review, the declarations simply demonstrated that, in fact, the plaintiffs had done what they said they were going to do at the preliminary injunction stage of the case, which is participate in further recall campaigns. The stricken evidence merely demonstrated that they have, in fact, participated in further recall campaigns. And so it complements the Court's conclusion that this case is capable of repetition yet evading review because it had actually repeated. And so it was an abuse of discretion for the trial court to have stricken that evidence because it responded directly to something that the PDC had raised in the responsive briefs that was unexpected, and it was unexpected because they had just lost the precise issue. Turning to the attorney's fees issue, the district court abused its discretion in two ways. First, it applied an inflexible per se rule that it adopted from a vacated decision, the reasoning of which this Court had abandoned upon rehearing, namely the decision, the reasoning in PIN K-1. That is, it simply concluded that we were late and our misreading of the rules, even under the confusing circumstances here, was not sufficient for excusable neglect. But that is not the standard that the Supreme Court set out in Pioneer, nor is it the standard that this Court adopted in PIN K-2. Moreover, the district court compounded its abuse of its discretion by refusing to consider the remaining Pioneer factors. It only looked for the reason for the delay, and it did so in direct contradiction of this Court's decision in Limoge, which says that all of the Pioneer factors have to be considered. We therefore respectfully request that this Court reverse the district court, reach the issue of the constitutionality of the statute, find that we have demonstrated excusable neglect, and remand this issue, the issue of attorney's fees for the court, to the district court for determination of the amount of fees. Mr. Murrow, let me ask you a question. Give me the basis for your argument that we should direct the award of fees under the Pioneer factors and the NBANK PIN K case, as opposed to vacating and remanding to the district court and asking Judge Bryan to analyze the issue under all of the factors. Your Honor, in both of Limoge and in the case of, I'm trying to think, I think it's Bateman, yes, Bateman v. USPS 21F3-1220, this Court looked at the same circumstances that exist here, which is that a court had decided that excusable neglect did not exist. The losing party appealed. This Court was able to look at the precise standards for excusable neglect and apply them as well as the district court could. The issue has been fully briefed to your Honors, and this Court can exercise its judgment as to whether excusable neglect exists in this case, just as well as the district court. Counsel, are you asking us to take it a step further, not just to make the excusable neglect finding, but are you asking for an award of fees? We're asking that. That's what Judge Gould's asking about. Oh, I'm sorry, I misunderstood. Perhaps the best way to phrase it, Your Honor, is we would like the court to, we would like to have the decision of the district court striking our motion for attorney's fees to be vacated so that we may proceed with a determination of those fees before the district court because the state has not come forward with any justifications as to why we would not be entitled to fees except we were late. So you're not asking for an award of fees in the first instance here? No. I understand. But you're, I thought, maybe I misunderstood, but I thought you were asking us to send it back telling the court to determine fees as opposed to telling the court to reassess and let all the pioneer factors. Your Honor, I think it's in the middle of that. What we are saying is that we have satisfied all the pioneer factors and that the case should be remanded for a determination of, I suppose, our entitlement to fees in assuming that we made the case for excusable neglect and because there is no justification for withholding fees or assuming that there's no justification for withholding fees for determination of those fees by the district court. Is that clear enough? I think I understand. We understand it now. Your time has expired, but we will give you a little time for rebuttal. We'll give you a minute. All right. Thank you, Your Honor. Now, Ms. Castile. Now, I think those microphones are adjustable. Well, the podium is. Very high tech. That looks like it fits you now. Thank you. May it please the court, my name is Callie Castile. I'm an assistant attorney general, and I'm here on behalf of the Washington State Defendant Appellees. The appellants won below, and they have not shown that the district court abused its discretion when it declined to reach their facial challenge, having granted them relief on narrow as applied grounds. The district court also didn't abuse its discretion when it struck counsel's late filed request for attorney's fees or declined to consider their new issues and facts on reply. As an initial matter, the recall proponents are not aggrieved parties entitled to appeal. Counsel, may I ask you a question about that? Yes. The opposing counsel certainly thinks he is. They didn't get all of the relief he was seeking, or his client did not. And so my question goes to the court's order. The phrase, in this case only, it seems to me, could modify the plaintiffs or could modify permanently enjoin. And my question is, how do you read the order? You're correct, Your Honor, that the order is ambiguous. The Public Disclosure Commission has interpreted that in the most liberal manner possible because of the two different readings and has interpreted it to say that it applies to the plaintiffs, period. Forever? Yes. So how can that be? It's a law firm, isn't it? It's a law firm, it's an individual, and it's a campaign. But it is simply the Public Disclosure Commission taking what is an ambiguous order by a court and not wishing to violate that order. Who constitutes that commission? The Public Disclosure Commission? Yes. It is named of three different individuals appointed by the governor. And they're appointed by? The governor of the state of Washington. If there's a new election, does that commission turn over? It is by time period. And the governor certainly has the new governor would have the opportunity to reappoint, but if he doesn't or she doesn't, so choose. Do the orders of the PDC have the force of binding law on the state? No, Your Honor. So they could be undone. So sort of like an executive order, the president could be undone by the new administration? Yes. Thank you. It is a general rule that parties may not appeal from judgments in their favor, and the district court granted them full relief on their as-applied challenge. Could I ask you a question about that? Yes, Your Honor. Their complaint asserted both as-applied and facial challenges. Yes. And the court gave them relief on as-applied. So could they turn around next week or whenever there's an election again and file a new lawsuit making a facial challenge only as a way, if they wanted that litigated? Yes, they could. Every case is going to be different. It's going to have different circumstances. It's going to have different players than those involving a specific recall committee. And the district court didn't abuse its discretion in declining to take an unnecessarily broad pronouncement on Washington's law when it could fully resolve the issue on narrower grounds. Well, can I direct you to the same question I directed to counsel, which was the wink and the nod reservation, in our opinion. Given that the facial issue was before the court and that counsel attempted at some point to put declarations in with respect to another specific campaign that they were engaged in, what was the evidence before the court or could have been before the court as to whether, as a matter of fact, as a matter of proof, that there could be the kind of corruption that we referenced in the opinion as counsel. His response to my question was the state put forward no evidence to show that under the structure of the recall election that there was any history of any collaboration or wink and the nod corruption. So how do we deal with that? It is not the state's burden to show that there's actual corruption before limiting contributions. The United States Supreme Court and this court have recognized and upheld contribution limits if they're closely drawn to prevent the important interest of actual corruption or the appearance of corruption. The recall proponents contend that this statute should be stricken facially unconstitutional because of the contribution limits to all recall committees. But that argument only applies to one set of circumstances under the statute. The 4217A-405 subsection 3 applies contribution limits not just to the contributions to recall committees but to contributions to the public officials themselves. They ignore the fact that the statute specifically addresses the sufficiently important interest of preventing the actuality or appearance of quid pro quo corruption with respect to the public officials whose recall is being sought. Further, with respect to the recall committees themselves, nothing in Washington law prevents coordination by a potential candidate from running a recall committee. Nor is there anything in Washington law that doesn't address the timing of the recall election with respect to the election of a potential candidate. Finally, as this court has recognized, there may be circumstances where there's a wink and a nod with respect to these issues. All three of those factors demonstrate why this court should not take the unnecessarily strong medicine of striking down Washington's limit on contributions. The recall proponents simply have not met their burden of demonstrating that in all of these three circumstances the statute is unconstitutionally overbroad. Their claim of underinclusion. Could I ask you a question on that? Yes, Your Honor. The normal overbreadth standard, as I always understood it, was that it would have to be unconstitutional in all of its applications. But Mr. Maurer argued that under First Amendment law, it's enough if a substantial number of people are affected. So how do you respond to that argument? That is a correct standard of the law. But the United States Supreme Court has held that finding a statute unconstitutionally overbroad is strong medicine, and the courts must apply principles of judicial restraint, including avoiding formulating broad constitutional rules, avoiding interpreting statutes based only on the particular facts of a particular case, avoiding short-circuiting the democratic process, and allowing the statute to be enforced in legitimate circumstances. How do you then address counsel's argument that, given the structure of the Washington recall, where there isn't a competing ballot-listed candidate who will come into the process, and your argument that it has to depend on the circumstances, his argument is that means that every recall committee and every recall election has to disclose or not disclose at their peril, because the state might come in and argue that there was, in fact, the appearance of corruption. So that given the nature of these recall elections and the speed with which people have to act and the potential chilling effect, why shouldn't we reach out and say this statute as structured on its face places too great a burden on the recall campaigns? Is there something inherent in the statute that gives them, for example, a very quick remedy to make sure that the state won't go after them for non-disclosure? It's not a matter of disclosure, Your Honor. It's actually a matter of whether contribution limits of who can, the amount that individuals can contribute to the particular campaign. But with respect to that, there are avenues that they could take. They could seek a declaratory order from the Public Disclosure Commission based on the individual facts and circumstances. How quickly could they get that? Your Honor, it would depend on the circumstances. I'm not familiar with the exact timing of the PDC's rules with respect to how fast they could be appeared, but they do meet on a monthly basis. Monthly. Okay. But also with respect to the state's interest of preventing corruption and the appearance of corruption, again, there's nothing to say that an individual who's running a recall committee couldn't, at the same time that they're seeking to recall a public official, say to themselves, you know what? I am the best candidate for that job. And to be seeking with either the public entity that would be appointing that position, depending on the timing of the case, or to announce their own candidacy. That is exactly what the United States Supreme Court and this court have acknowledged that why contribution limits are acceptable, in that it addresses both the actual corruption and the appearance of corruption. Here the recall proponents have not met their burden of demonstrating that the district court erred in not taking that overly broad medicine and striking down the statute as a whole. Turning to the issue with respect to the late file of attorney's fees, the decision to grant or deny an untimely request for attorney's fees is entrusted to the discretion of the district court. Here the district court determined that the appellants had not shown good cause based on excusable neglect for their late file request, and there struck the motion. No, but he relied on a case that we subsequently overruled. Yes, Your Honor. It could be excusable neglect can relieve the prevailing party from late filing. It can. But what the district court did and what it relied upon was the exact same premise in both Pen K-1 and Pen K-2, that a lawyer's failure to read an applicable rule is one of the least compelling excuses that can occur. That may be, but it's not what he said. He basically invoked with the mindset what may well have been justified by an opinion that we later overruled. He did cite that, but the same quote that he cited with respect to that was both relayed in Pen K-2 and Pioneer by the United States Supreme Court. And contrary to my opposing counsel's argument, the district court here did cite the Pioneer-Brunswick four-part test and, in fact, found that the state had not met its burden with respect to three of the balancing issues. But it did find that under the circumstances of the case, the reason for delay was sufficient to find they had not submitted good cause for him to excuse their delay in filing an untimely motion for attorney's fees. It was not an abuse of discretion for him to focus on that one particular factor, given the circumstances here, especially when this court has found in Pen K-2 that if a district court declines to permit a late filing, you'd be hard-pressed to find a rationale to overturn that, as long as they apply the right test. Here, the district court may have made an error with respect to its citation, but the principles applied have been upheld by this court in Pen K, as well as other cases. So you think we can tell from this record that he applied the correct test? Yes, Your Honor, because he did cite the Pioneer v. Brunswick four-part test. He then goes on to say the state did not make a showing with respect to three of the factors, and then focused on the fourth factor. And this court in Bateman, in fact, explicitly said that a district court, if it cites the Pioneer test, and then goes on to show why, then that is sufficient. The district court also did not abuse its discretion when it struck the untimely materials in reply. Those materials addressed new arguments and evidence with respect to standing. However, and the court found that it should not consider it. However, the district court ultimately found that the parties did have standing, and therefore there was no harm to them in striking those materials. The recall proponents have not met the burden in this appeal. The district court did not abuse its discretion when it did not reach the discretion when it struck their counsel's untimely request for attorney's fees, or rejected their supplemental information in the reply brief. The state respectfully requests that the district court's final order and judgments be affirmed. Thank you very much. Thank you, counsel. Okay, we'll hear rebuttal argument from Mr. Moore. Thank you, Your Honor. With regard to Judge Fischer's questions about whether the state has met its burden, I would direct Your Honor to footnote nine of the Ferris decision, the Ferris 1 decision, where this court specifically addresses this question and holds that the state has not provided any evidence that Washington's recall elections present a special circumstance in which the appearance of influence or access would cause the electorate to lose faith in our democracy. They still have not presented any evidence, Your Honor. In addition, that footnote addresses the specific circumstances Ms. Castillo raised with regard to the incumbent elected official in power at the time, and it is simply an artifact of the Citizens United decision that independent groups, groups that act independently cannot have contributions to their political speech restricted. Finally, with regard to the order that the district court entered, that order is not binding on future commissions, as this court recognized, and also other agencies in the state of Washington have enforcement power over campaign finance laws, as well as private parties. So that order does not bind either of those two entities. Thank you, Your Honor. Thank you. Thank you. Thank you very much. It's very well argued by counsel on both appellant and appellee's side. The case of Ferris v. Seabrook shall be submitted, and we will adjourn until tomorrow morning.
judges: Fisher, Gould, Christen